UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | |
|---|---|---|
| ANTWHON SUITER, | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Civil Action No.:   5:22-cv-31 |
| | ) | |
| COUNTY OF AUGUSTA, et al, | ) | |
| | ) | |
| *Defendants* | ) | |

**DEFENDANTS SMITH and JOHNSON**
**MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**

Defendants Donald Smith and Dylan Johnson, by counsel, file the memorandum in support of their motion to dismiss filed pursuant to Rule 12(b)(1) and 12(b)(6) and state as follows:

Antwhon Suiter, a self-appointed "constitutional auditor," filed this civil rights suit, *pro se*, arising out of a brief traffic stop in Augusta County, Virginia, during which he was asked a few questions and asked to provide identification. Donald Smith ("Sheriff Smith") is the elected sheriff of Augusta County is used in his official capacity only.  Dylan Johnson ("Deputy Johnson") is a deputy sheriff sued in both his individual and official capacities.

In his amended complaint[1], Suiter asserts four claims:  Count One asserts a First Amendment retaliation claim against Deputy Johnson only, Count Two asserts a Fourth Amendment unlawful seizure and excessive force claim against both defendants, Count Three asserts a Fourteenth Amendment claim against Deputy Johnson only arising from the same events underpinning the First and Fourth Amendment claims, and Count Four asserts a claim against Deputy Johnson only for the

Timberlake**Smith**
Staunton, VA
540.885.1517

---

[1] The Amended Complaint appears to have dropped two defendants:  Augusta County and the Augusta County Sheriff's Department.

intentional infliction of emotional distress. Suiter seeks declaratory judgment, injunctive relief, and damages.

Defendants move to dismiss all claims against Sheriff Smith, to dismiss Counts One, Three, and Four against Deputy Johnson, and to dismiss all claims for injunctive relief.

## ALLEGATIONS

Suiter claims to be a self-appointed auditor of police. (Am. Compl. ¶ 44, ECF 19 p. 8).[2] Suiter admits that he was following Deputy Johnson throughout Staunton and Augusta County to photograph and video his activities. *Id*. Suiter alleges that he saw a uniformed deputy, who he believes was Deputy Johnson, sitting in an unmarked vehicle which Suiter believed to be a government vehicle parked at the Sheetz gas station in Staunton. (Am. Compl. ¶ 23, 25, ECF 19, pp. 4-5). Without any information suggesting illegal or unlawful activity by the deputy, Suiter presumed Deputy Johnson was on duty since he was in uniform and that he was engaged in illegal activity, so staked out the parking lot all the while taking photographs and videos of Deputy Johnson, who eventually was observed acquiring stuffed animals and placing them in his vehicle. (Am. Compl. ¶¶ 24-28, ECF 19, pp. 4-5). Deputy Johnson left the parking lot and headed east toward Fishersville. (Am. Compl. ¶ 29, ECF 19, p. 5). Suiter claims that he left soon thereafter to go home, and headed in the same direction as the deputy. (Am. Compl. ¶ 30, ECF 19, p. 5). While heading home, Suiter's dash cam continued to record Deputy Johnson's vehicle until losing sight of it. (Am. Compl. ¶ 31, ECF 19, p. 5). After losing sight of Deputy Johnson's vehicle, Suiter continued through a neighborhood and just happened to come upon the vehicle he had been shadowing parked in front of a house which was empty. (Am.

Timberlake**Smith**
Staunton, VA
540.885.1517

---

[2] Suiter is also a cast member on a reality TV show produced by the CEO of Nexus Services, Inc., and is reported in the media as living rent-free in houses that are owned by the vice president and an LLC subsidiary of Nexus. *See* https://www.wmra.org/2022-02-08/a-complex-nexus-activists-multiple-lawsuits-and-reality-tv ; and https://www.wmra.org/wmra-news/2021-11-08/local-blm-group-sues-augusta-county-sheriff.

Compl. ¶ 33, ECF 19, p. 6). Suiter continued driving. (Am. Compl. ¶¶ 34, 35, 36, ECF 19, p. 6). Later, he noticed a truck come up behind him at high rate of speed. (Am. Compl. ¶ 37, ECF 19, p. 6). Eventually, Suiter pulled into a driveway to let the truck pass when the truck activated its emergency lights. (Am. Compl. ¶ 40, ECF 19, p. 7). Deputy Johnson allegedly approached Suiter's vehicle and asked Suiter what he was doing, told Suiter that he was being suspicious, requested Suiter's identification, threatened him with arrest for trespass, and refused to give Suiter his badge number. (Am. Compl ¶¶ 50-65, ECF 19, p. 8-9). While the complaint asserts that Suiter was "searched," there are no facts alleged that Suiter's person or vehicle was searched, nor are there any allegations that Deputy Johnson made any physical contact with Suiter's person. Suiter alleges that he did not commit any traffic violations or crimes. (Am. Compl. ¶ 66, ECF 19, p. 10). There are no allegations that Suiter was arrested or charged with a crime. The traffic stop occurred at 8:59 p.m.  (Am. Compl. ¶ 42, ECF 19, p. 7).

Suiter does not allege that Deputy Johnson was aware of Suiter's "auditing" activities, or who Suiter was at the time of the traffic stop. There are no allegations of any personal involvement by Sheriff Smith, who is sued in his official capacity only.

## ARGUMENT

### I.      Legal standard.

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) tests the court's subject matter jurisdiction over a plaintiff's claim. The plaintiff bears the burden of establishing that jurisdiction exists. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). When a defendant makes a facial challenge to subject matter jurisdiction based upon the allegations in the complaint, the 12(b)(6) standard applies: the facts alleged in the complaint are taken as true. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). However, if a defendant challenges the factual predicate

Timberlake**Smith**
Staunton, VA
540.885.1517

3

of subject matter jurisdiction, the trial court may consider evidence without converting the proceeding to one for summary judgment. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). The burden of proving subject matter jurisdiction in this circumstance is on the plaintiff, the party asserting jurisdiction. *Id.* The presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction. *Kerns*, 585 F.3d at 192.

The 12(b)(6) standard tests the legal sufficiency of a complaint to determine if it has properly stated a claim. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A complaint fails to state a claim upon which relief can be granted when no relief is available under any set of facts that could be proven consistent with the allegations of the complaint. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S. Ct. 992 (2002). In determining the sufficiency of a complaint, Fed. R. Civ. P. 8 requires that a plaintiff plead more than unadorned, the-defendant-unlawfully-harmed-me-accusations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). A pleading that offers labels or conclusions or a formulaic recitation of the elements of a cause of action is insufficient. *Id.* The claim must be plausible on its face. *Id.* The plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Plaintiff must plead more than a sheer possibility. *Id.* Naked assertions devoid of further factual enhancement are insufficient to meet the pleading standard in Fed. R. Civ. P. 8. *Id.*; *Oberg ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Facts that are merely consistent with a defendant's liability fall short of the pleading standard. *Iqbal*, 556 U.S. at 678. The tenet that a court must accept as true all of the allegations contained in a

Timberlake**Smith**
Staunton, VA
540.885.1517

4

complaint is inapplicable to legal conclusions. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*.

## II.     The Eleventh Amendment bars all claims for money damages against Sheriff Smith.

Suiter's prayer for relief seeks money damages against Sheriff Smith for all counts. (Am. Compl. Prayer for Relief ¶¶ 1.c., 2.c., 3.c., and 4.c., ECF 19, pp. 14-16).  Suiter's claims for money damages against Sheriff Smith and Deputy Johnson in their official capacities are barred by the Eleventh Amendment.

It is well established that Virginia sheriff's and their deputies sued in their official capacities are entitled to Eleventh Amendment immunity. *See Bland v. Roberts*, 730 F.3d 368, 394 (4th Cir. 2013) ("[T]he district court properly ruled that . . . the Sheriff was entitled to Eleventh Amendment immunity . . . to the extent they seek monetary relief against him in his official capacity."); *Riddick v. Watson*, 503 F. Supp. 3d 399, 414 (E.D. Va. 2020); *Smith v. McCarthy*, 349 F. App'x 851, 858 n.11 (4th Cir. 2009) (unpublished per curiam) ("[T]he district court did not err in dismissing the [plaintiffs'] claims against [deputy sheriffs] in their official capacities, as they are afforded immunity by the Eleventh Amendment."); *Riddick v. Watson*, 503 F. Supp. 3d 399, 413 (E.D. Va. 2020); *Vollette v. Watson*, 937 F. Supp. 2d 706, 714-15, 715 n.7 (E.D. Va. 2013); *Lunsford v. Wythe Cty. Sheriff,* Civil Action No. 7:18-cv-00038, 2019 U.S. Dist. LEXIS 26413, at *5 (W.D. Va. Feb. 19, 2019); *Estate of Harvey v. Roanoke City Sheriff's Office*, Civil Action No. 7:06CV00603, 2007 U.S. Dist. LEXIS 12614, at *10 (W.D. Va. Feb. 23, 2007).

Suiter's claims for money damages against Sheriff Smith and Deputy Johnson in their official capacities are barred by the Eleventh Amendment and should be dismissed with prejudice.

## III.    Count Two against Sheriff Smith should be dismissed as there are no allegations of personal involvement necessary to establish supervisory liability.

Timberlake**Smith**
Staunton, VA
540.885.1517

The only count against Sheriff Smith is a 42 U.S.C. § 1983 claim in Count Two for violations of the Fourth Amendment for unlawful seizure and excessive force. "Liability under § 1983 is 'personal, based upon each defendant's own constitutional violations." *Baltas v. Clarke*, No. 7:20cv00276, 2021 U.S. Dist. LEXIS 50731, at *43 (W.D. Va. Mar. 18, 2021) (*quoting Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017). To state a claim under § 1983, a plaintiff must allege that the official charged acted personally in the deprivation of the Plaintiff's rights. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977).

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Liability may be imposed based only on an official's own conduct. *Danser v. Stansberry*, 772 F.3d 340, 349 (4th Cir. 2014).

To state a claim of supervisory liability under § 1983, a plaintiff must show: (1) "that the supervisor had actual or constructive knowledge that h[er] subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices' and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the Plaintiff." *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). Conclusory allegations that a sheriff promulgates policies without allegations that the Sheriff had any interaction with the Plaintiff or was personally involved in the underlying constitutional violations of his deputies are insufficient to state a claim for supervisory liability under § 1983. *See Harrison v. Prince Wm. Cty. Police Dep't*, 640 F. Supp. 2d 688, 711 (E.D. Va. 2009).

Timberlake Smith
Staunton, VA
540.885.1517

Suiter seeks declaratory and injunctive relief as well as damages from Sheriff Smith, who is sued in his official capacity only. While Suiter alleges that Deputy Johnson, who was employed by Sheriff Smith, violated Suiter's constitutional rights, there are no allegations of any personal involvement by Sheriff Smith. And while Suiter requests injunctive relief against the Augusta County Sheriff's Department (which is no longer a defendant) to complete training to prohibit future violations, Suiter provides no facts establishing how the existing training was deficient or even that deficient training was the cause of the alleged constitutional violations.

Without personal involvement by Sheriff Smith, Suiter cannot state a constitutional claim against him, and such claim should be dismissed.

### IV.   Count One fails to state a retaliation claim under the First Amendment and Deputy Johnson is entitled to qualified immunity.

Count one asserts a First Amendment retaliation claim against Deputy Johnson. Suiter claims to be a self-appointed constitutional auditor and the President of Black Lives Matter, Shenandoah Valley. He alleges that he photographed and videoed Deputy Johnson loading stuffed animals into his vehicle at a Sheetz parking lot in Staunton. (Am. Compl. ¶25-27). After Deputy Johnson exited the parking lot, Suiter also left to go home, which happened to be in the same direction. (Am. Compl. ¶ 30). Suiter's dash cam continued to record until he lost sight of Deputy Johnson. (Am. Compl. ¶ 31). Suiter continued driving and at some point later just happened upon Deputy Johnson's vehicle "tucked away" in a front yard. (Am. Compl. ¶¶ 32-33). Plaintiff later noticed a truck aggressively pull in behind him. (Am. Compl. ¶ 37). Suiter pulled into a driveway to let the truck pass when the truck's emergency lights were activated. Deputy Johnson exited the truck and thereafter asked Suiter what he was doing and asked for his identification. (Compl. ¶46-50). The time of the traffic stop was 8:59 p.m.

Notably, after leaving the Sheetz parking lot, Suiter was NOT actively engaged in any alleged protected activities as he acknowledges that he was heading home which coincidentally was in the same direction as Deputy Suiter.  Likewise, Suiter just happened on the truck parked in a yard. There are no allegations that at the time of the traffic stop, Deputy Johnson was aware that he was being photographed or filmed in the Sheetz parking lot earlier in the evening.  Nor are there any allegations that Deputy Johnson was aware of Suiter's prior activity of police auditing or his affiliation with any particular group.  Suiter's entire First Amendment claim is based upon his *assumption* that the reason for the stop was motivated by Suiter's prior filming of Deputy Johnson. Unsupported assumptions and speculation are not sufficient grounds to state a retaliation claim under the First Amendment.

The right to free speech protected by the First Amendment includes not only the affirmative right to speak but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). However, not every reaction made in response to, or in temporal proximity to, an exercise of a First Amendment right to free speech is actionable retaliation. *Id*. Thus, to prevail on a retaliation claim under 42 U.S.C. § 1983, a plaintiff must pass a three-prong test: (1) his speech was protected; (2) the retaliatory action had a chilling effect on plaintiff's protected speech; and (3) a causal relationship exists between the speech and the defendant's retaliatory action. *Ruttenberg v. Jones*, 283 Fed. Appx. 121, 130 (4th Cir. 2008). The "chilling effect" is measured objectively: it is satisfied only if a "person of reasonable firmness in [the plaintiff's] situation would have been chilled." *Id*. The third element, the causation requirement, is rigorous; it is not enough that the protected expression played a role or was even a motivating factor in the retaliation. *Id. citing Huang v. Bd. of Governors of the Univ. of*

*N.C.*, 902 F.2d 1134, 1140 (4th Cir. 1990). A plaintiff must show that "but for" the protected speech, the alleged retaliatory conduct would not have occurred. *Id.*

Here, other than Suiter's unsupported assumptions about the motivation for the stop, there are no facts alleged demonstrating that Deputy Johnson was aware of Suiter's filming activities or Suiter's affiliation with any particular group, much less that the stop would not have occurred *but for* the protected speech. Nor are there facts establishing that Deputy Johnson's alleged conduct caused an objective chilling effect on Suiter's alleged protected activities. Thus, the amended complaint fails to state a claim for retaliation under the First Amendment upon which relief can be granted.

At a minimum, Deputy Johnson is entitled to qualified immunity as Suiter did not have a *clearly established right* under the First Amendment to follow police and film them. *See Szymecki v. Houck*, 353 F. App'x 852, 853 (4th Cir. 2009) (First Amendment right to record police activities on public property was not clearly established at the time of the alleged conduct); *see also Hulbert v. Pope*, 535 F. Supp. 3d 431, 448 (D. Md. April 22, 2021) (noting that the Fourth Circuit has not addressed whether the First Amendment protects a citizen's right to record police performing their duties in public); *Sharpe v. Ellis*, No. 4:19-CV-157-D, 2021 U.S. Dist. LEXIS 128101, at *9 (E.D.N.C. July 9, 2021) (the Fourth Circuit has not yet addressed whether the First Amendment protects the right to record the police in performing their public duties, let alone whether the First Amendment protects the right of a person from inside a stopped car to livestream the police performing a traffic stop).

At the time of this incident on March 22, 2021, neither the Fourth Circuit nor the United States Supreme Court had determined that filming police activity is protected under the First Amendment. Thus, no reasonable officer in Deputy Johnson's position would know that his

Timberlake**Smith**

Staunton, VA
540.885.1517

9

conduct violated a clearly established right to film police activity under the First Amendment, and

Deputy Johnson is entitled to qualified immunity.[3]

**V.      Plaintiff's Fourteenth Amendment claim in Count Three cannot serve as a separate, free-standing claim as it arises from the same nexus of events as the First and Fourth Amendment claims in Counts One and Two.**

Count Three asserts claims under the Fourteenth Amendment for the same nexus of events

underpinning Suiter's First Amendment retaliation claim (Count One) and Fourth Amendment

claim (Count Two). Where a party raises both First or Fourth Amendment challenges and due

process challenges under the Fourteenth Amendment to the same nexus of events, the due process

claim collapses into the First and Fourth Amendment claims and cannot serve as a separate, free-

standing claim. *See Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871 (1989); *Safar v.

Tingle*, 859 F.3d 241, 245 (4th Cir. 2017)(the Due Process Clause is not the proper lens through

which to evaluate law enforcement's missteps where the Fourth Amendment provides an explicit

textual source of constitutional protection against unreasonable seizures and arrests); *Presley v. City

of Charlottesville*, 464 F.3d 480, 484-85 (4th Cir. 2006) (a single set of facts may not

simultaneously give rise to two constitutional violations: when one of the provisions assertedly

violated contains only a "generalized notion" of constitutional rights -- such as substantive due

process -- and the other provision is "an explicit textual source of constitutional protection" that

specifically addresses the precise harm at issue); *Edwards v. City of Goldsboro*, 178 F.3d 231, 248

n.11 (4th Cir. 1999) (when the First Amendment "provides an explicit textual source of

constitutional protection against" the particular sort of government behavior of which he complains

in his substantive due process claim, the First Amendment, "not the more generalized notion of

Timberlake**Smith**
Staunton, VA
540.885.1517

---

[3] Plaintiff's claim for injunctive relief under Count One is not directed to Deputy Johnson, but is directed to a non party, the Augusta County Sheriff's Department. (Am. Compl. Prayer for Relief ¶1.b, ECF 19 p. 14).

substantive due process, must be the guide for analyzing' his claim.") (*quoting County of Sacramento v. Lewis*, 523 U.S. 833, 842, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998)); *see also, Tomasello v. Greenzweig*, 461 F. Supp. 3d 302, 315 (E.D. Va. 2020).

As the First and Fourth Amendments provide the explicit textual source of constitutional protections against the same conduct complained of in Suiter's substantive due process claim, the First and Fourth Amendments, "not the more generalized notion of substantive due process," serve as the guide for analyzing' his claims. Thus, Suiter's free-standing Fourteenth Amendment claim in Count Three should be dismissed as his due process claims "collapse" into the First and Fourth Amendment claims asserted in Counts One and Two.

**VI.  The claim for the intentional infliction of emotional distress (Count Four) should be dismissed for failure to state a claim upon which relief can be granted.**

The tort of intentional infliction of emotional distress (IIED) is "not favored" in the law, because there are inherent problems in proving a claim alleging injury to the mind or emotions in the absence of accompanying physical injury. *Super Value, Inc. v. Johnson*, 276 Va. 356, 370 (2008)(citations  omitted). Thus, a plaintiff alleging intentional infliction of emotional distress must prove his case by clear and convincing evidence. *Id.*; *Russo v. White*, 241 Va. 23, 26 (1990); *Ruth v. Fletcher*, 237 Va. 366, 373 (1989).

The tort of intentional infliction of emotional distress has four elements that must be alleged: 1) the wrongdoer's conduct was intentional or reckless; 2) the conduct was outrageous or intolerable; 3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and 4) the resulting  emotional distress was severe. *Womack v. Eldridge*, 215 Va. 338, 342 (1974). Virginia courts dismiss intentional infliction of emotional distress claims arising out of lawful conduct by law enforcement officers. *McPhearson v. Anderson*, 874 F. Supp.

2d 573, 584 (E.D. Va. 2012). The lawfulness of Plaintiff's detention requires dismissal of an intentional infliction of emotional distress claim. *Id.*

With respect to the first element, a plaintiff must show that "the wrongdoer had the specific purpose of inflicting emotional distress or [that] he intended his specific conduct and knew or should have known that emotional distress would likely result." *Id.* To establish the second element, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Russo*, 241 Va. at 27. (quotations omitted). As to the severity element, Virginia law makes clear that "liability arises only when the emotional distress is extreme, and only where the distress inflicted is so severe that no reasonable person could be expected to endure it." *Id.* (quotations omitted).

As to the first element of whether Deputy Johnson's conduct was intentional or reckless it is not sufficient to simply allege that the conduct was intentional and reckless, as the Court is not bound by Plaintiff's conclusory allegations. *Ogunde v. Prison Health Services*, 274 Va. 55, 66(2007)(finding that allegations that physicians' decisions to deny prisoner medical treatment were intentional and reckless were not sufficient to state a claim for intentional infliction of emotional distress). Suiter must allege facts sufficient to establish that Deputy Johnson acted intentionally and with the very purpose of causing Suiter harm. *See Womak*, 215 Va. at 342. Here, there are no specific factual allegations that Deputy Johnson acted with the very purpose of causing harm, only conclusory allegations based upon speculation and assumptions which are insufficient to survive a motion to dismiss an IIED claim.

The second element, the outrageousness requirement, is aimed at limiting frivolous suits and avoiding litigation in situations where only bad manners and mere hurt feelings are involved.

Timberlake**Smith**
Staunton, VA
540.885.1517

12

*Jordan v. Shands*, 255 Va. 492, 498-99 (1998); *Womack*, 215 Va. at 342. Even where a defendant acts with tortious or even criminal intent, such intent alone is insufficient. *Russo*, 241 Va. at 27. Criminal or malicious intent alone is insufficient for an IIED claim. *Farrar v. Worrell*, No. 7:19CV00626, 2022 U.S. Dist. LEXIS 83383, at *25 (W.D. Va. May 9, 2022). Rather, a plaintiff must establish that defendant's conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Russo*, 241 Va. at 27. Even if a defendant has intended to inflict emotional distress or his conduct can be characterized by malice or a degree of aggravation which would entitle the Plaintiff to punitive damages for another tort, the requirement of the second prong has not been satisfied. *Id*. Moreover, in alleging "outrageous or intolerable" conduct, it is insufficient for a complaint to describe conduct that is merely "insensitive and demeaning." *Eldib v. Bass Pro Outdoor World, LLC*, 654 F. App'x 620, 621 (4th Cir. 2016) (citations omitted). Whether the defendant's conduct may reasonably  be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine. *Womack*, 215 Va. at 342.

In *Harris v. Kreutzer*, Plaintiff claimed that during an independent medical exam ("IME") conducted for purposes of her personal injury lawsuit, the IME licensed clinical psychologist "verbally abused [her], raised his voice to her, caused her to break down into tears . . . , stated she was 'putting on a show', and accused her of being a faker and malingerer." *Harris v. Kreutzer*, 271 Va. 188, 204 (2006). Even assuming that the conduct occurred, the Virginia Supreme Court found that such conduct was not "beyond all possible bounds of decency" or "utterly intolerable in a civilized community." *Id*.; *quoting Russo*, 241 Va. at 27. The Court noted that even "[i]nsensitive and demeaning conduct does not equate to outrageous behavior as set by our caselaw." *Id*.

Timberlake**Smith**
Staunton, VA
540.885.1517

The facts alleged in this case include Deputy Johnson conducting a traffic stop and asking Suiter what he was doing and asking for his identification. That is all. While Suiter claims to be a self-appointed constitutional auditor and the President of Black Lives Matter, Shenandoah Valley, he does not allege that Deputy Johnson was aware of Suiter's prior activity of filming police generally, or him specifically, or Suiter's group affiliation at the time of the stop. Deputy Johnson pulled him over and asked him what he was doing and asked for his identification, and then let him go. The conduct alleged here is far less outrageous or severe than that found to be insufficient in other cases. *See Kreutzer*, *supra* (finding that verbal abuse and accusations by the doctor that the patient was a faker and malingerer is not sufficiently outrageous or intolerable to state a claim); *Hueston v. Kizer*, 2009 Va. Cir. LEXIS 142 (Hanover Cnty Cir. Ct. 2008) (finding that allegations that defendants falsely accused officer of lying on a polygraph and ruined his contracting business did not constitute outrageous conduct sufficient to establish an intentional infliction of emotional distress claim); *Wilson v. Modjadidi*, 74 Va. Cir. 279, 280-81 (Cty Norfolk Cir. Ct. 2007) (holding that allegations that doctor used abusive language toward Plaintiff and fondled a patient in her presence with the intent to cause her emotional distress did not constitute outrageous conduct sufficient to establish an intentional infliction of emotional distress claim); *Douglas v. Dabney S. Lancaster Community College*, 990 F. Supp. 447, 465-66 (W.D. Va. 1997) (finding evidence that defendant had actually created a hostile work environment and had sexually harassed Plaintiff to be insufficient to establish an intentional infliction of emotional distress claim); *Dwyer v. Smith*, 867 F.2d 184, 194-95 (4th Cir. 1989) (finding that sexual comments, accusations of sexual relations with employees, and delivery of pornography to Plaintiff insufficient to prove outrageous conduct by the defendant).

Timberlake**Smith**
Staunton, VA
540.885.1517

14

With respect to the third and fourth elements of an IIED claim, a plaintiff must plead facts sufficient to establish that the defendant's conduct caused severe emotional distress. Liability for intentional infliction of emotional distress "arises only when the emotional distress is extreme, and only where the distress inflicted is so severe that no reasonable person could be expected to endure it. *Russo*, 241 Va. at 27. In the *Russo* case, a plaintiff complained of nervousness, sleep deprivation, stress and its physical symptoms, withdrawal from activities, and inability to concentrate at work. *Id*. The Virginia Supreme Court found that this level of injury was not the type of extreme emotional distress that was so severe that no reasonable person could be expected to endure it. *Id*. at 28.

Similarly in the *Harris* case, the plaintiff alleged nearly identical symptoms as in the *Russo* case, including symptoms of her anguish including nightmares, difficulty sleeping, extreme loss of self-esteem and depression, which required additional psychological treatment and counseling. *Harris*, 217 Va. at 205. The plaintiff in that case also claimed to have suffered mortification, humiliation, shame, disgrace, and injury to reputation. *Id*. Notwithstanding the plaintiff's need for additional psychological treatment and counseling in the *Harris* case, the Virginia Supreme Court nevertheless found that her symptoms simply were not severe enough to establish an intentional infliction of emotional distress claim. *Id*. Some examples provided by the Court of evidence that may be sufficient to establish severe emotional distress include: an objective physical injury caused by the stress for which plaintiff sought medical treatment, confinement to the home or a hospital; or lost income. *Russo*, 241 Va. at 28.

None of those examples of severe emotional distress exist in the present case. Suiter alleges only that he suffered emotional distress, mental anguish, anxiety and exhibited symptoms of Post-

Traumatic Stress Disorder (PTSD)." (Am. Compl. ¶ 70). These allegations fall far short of those necessary to state a viable claim for the intentional infliction of emotional distress.

**VII.    The Amended Complaint fails to a state a claim for injunctive relief**.

For each count, Suiter seeks "injunctive relief requiring the County of Augusta Sheriff's Department to complete constitutional rights training and prohibitory injunctive relief to prohibit all Defendants from further constitutional rights violation." (Am. Compl. Prayer for Relief ¶¶ 1.b., 2.b., 3.b. and 4.b, ECF 19, pp. 14-16). However, the "County of Augusta Sheriff's Department" is *non suis juris* and has been dropped from the suit. Injunctive relief, by its very nature, can only be granted in an *in personam* action commenced by one party against another in accordance with established process. *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 957 (4th Cir. 1999).  As Suiter seeks injunctive relief from a non party, such request for relief should be dismissed.

To the extent this Court extends the request for injunctive relief to Sheriff Smith, he is only named in Count Two, and should not be held liable for relief sought respecting claims not applicable to him.  With respect to claims against Deputy Johnson, there is no allegation (nor could there be ) that *Deputy Johnson* is empowered to perform or implement the requested injunctive relief.  The *Ex parte Young* exception to the Eleventh Amendment only authorizes suits against officials who have the power to provide the injunctive relief requested by the plaintiff. *Al-Habashy v. Va. Dep't of Juvenile Justice,* Civil Action No. 7:13CV00459, 2014 U.S. Dist. LEXIS 134848, at *29 (W.D. Va. Sep. 24, 2014) (citations omitted). Thus, claims for injunctive relief against Deputy Johnson who is not alleged to be responsible for training or to be a policy maker, should be dismissed.

Even if the request for injunctive relief was asserted against these defendants, Suiter's request for injunctive relief is not justified by the facts alleged. The amended complaint does not

TimberlakeSmith
Staunton, VA
540.885.1517

16

identify the training provided, describe how any existing training was deficient, or even assert that deficient training was the cause of the alleged constitutional violations. There are no allegations that additional or different training would have resulted in a different response, nor are there allegations of a pattern of constitutional violations to justify such an injunction. *See Lytle v. Doyle*, 326 F.3d 463, 474 (4th Cir. 2003) (citations omitted) (a failure to train can only form a basis for liability if it can be shown that policymakers were aware of, and acquiesced in, a pattern of constitutional violations). Moreover, there is no allegation that the incident (even assuming its unlawfulness) will be repeated or that plaintiff will suffer a continuing harm if he is not afforded injunctive relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 75 L. Ed. 2d 675, 103 S. Ct. 1660 (1983) (past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if "unaccompanied by any continuing, present adverse effects").

## CONCLUSION

For the foregoing reasons, Defendants request that all claims against Sheriff Smith be dismissed with prejudice, that Counts One, Three, and Four against Deputy Johnson be dismissed with prejudice, that all claims for injunctive relief be dismissed with prejudice, and that Defendants be awarded such other, and further relief as this Court deems appropriate.

DONALD SMITH, SHERIFF, and
DYLAN JOHNSON,

By Counsel

By:     /s/ Rosalie Pemberton Fessier
        Rosalie Pemberton Fessier
        VSB # 39030
        Brittany E. Shipley
        VSB # 93767
        Attorneys for Defendants Smith and Johnson
        Timberlake**Smith**

Timberlake**Smith**
Staunton, VA
540.885.1517

17

25 North Central Avenue
P. O. Box 108
Staunton, VA 24402-0108
phone:  540/885-1517
fax:       540/885-4537
email:  rfessier@timberlakesmith.com
            bshipley@timberlakesmith.com

Timberlake**Smith**

Staunton, VA
540.885.1517

CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2022, I have electronically filed this document with the Clerk of the Court using the CM/ECF system.

I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participant:

> Antwhon Suiter
> 207 Gray Avenue
> Staunton, VA   24401
> *Pro se plaintiff*

        /s/ Rosalie Pemberton Fessier
Rosalie Pemberton Fessier
VSB # 39030
Brittany E. Shipley
VSB # 93767
Attorneys for Defendants Smith and Johnson
Timberlake**Smith**
25 North Central Avenue
P. O. Box 108
Staunton, VA 24402-0108
phone:  540/885-1517
fax:      540/885-4537
email:  rfessier@timberlakesmith.com
            bshipley@timberlakesmith.com

Timberlake**Smith**
Staunton, VA
540.885.1517

19